Lillie vs. Dunbar.

LILLIE vs. DUNBAR.

*January 13 — February 3, 1885.*

*Sale of standing timber — Statute of frauds — Replevin — Damages.*

1. The interest of the vendee under a contract for the sale of standing timber is an interest in lands.

2. L., the owner of standing timber, made an oral contract for the sale thereof to W. upon condition that the title should remain in L. until payment of the purchase price. W. cut and removed the timber, but, before paying therefor and without the assent of L., sold and delivered it to D. In an action of replevin by L. against D., *held:*

(1) Though the contract between L. and W. was void because not in writing, yet, having cut the timber without objection on the part of L., W. was not a trespasser in so doing, and upon payment according to the agreement the absolute title would have vested in him.

(2) The contract between L. and W. being for the sale of an interest in lands, was not within the provisions of sec. 2317, R. S., and by the sale from W. to D. the latter acquired only the rights of W.

(3) The measure of plaintiff's damages was not the value of the timber cut, but the amount of the purchase price under his contract with W., with interest.

APPEAL from the Circuit Court for *Marathon* County.

The following statement of the case was prepared by Mr. Justice TAYLOR as a part of the opinion:

This was an action of replevin to recover the possession of a quantity of pine lumber which the plaintiff claimed to own, and which was, at the commencement of the action, in the possession of the defendant who also claimed to own the same.

The evidence established the following facts: *First.* That the lumber in question had been manufactured out of logs and timber which had been cut by one H. M. Wilcox from lands described in a contract introduced in evidence by the defendant, made between him and Wilcox, as the "Kick-

bush lands." *Second.* That the timber so cut from the
"Kickbush lands," and out of which the said lumber had
been manufactured, was the timber of the plaintiff by virtue
of a written contract of purchase from Kickbush, the owner
of the land. *Third.* That the plaintiff, *Lillie*, being the
owner of said timber, with the right to cut and remove the
same from said land, in the summer of 1882 made a verbal
contract with said Wilcox to sell him all the pine timber on
the "Kickbush lands" for $100, but upon the express condi-
tion that the title to the timber so sold should remain in the
said *Lillie* until the $100 was paid. *Fourth.* That the $100
was to be paid to the plaintiff by Wilcox, with ten per cent.
interest, in the fall of 1882. *Fifth.* After the verbal con-
tract so made between *Lillie* and Wilcox, Wilcox entered
into a written contract with the defendant, which was given
in evidence on the trial, by which he agreed to cut the tim-
ber sold to him by *Lillie* as well as other timber, and manu-
facture it into lumber and shingles, and deliver it to the
defendant at certain stipulated prices. Upon this written
contract defendant paid down, at the time it was made, in
November, 1882, $300. Under this contract the logs cut by
Wilcox, and delivered at his (Wilcox's) or the McIntosh mill,
were to be the property of the defendant when so delivered.
*Sixth.* The logs out of which the lumber in controversy
was manufactured were cut on the "Kickbush lands" by
Wilcox, and delivered and manufactured at his mill under
the contract between Wilcox and the defendant some time
before this action was commenced. *Seventh.* There is evi-
dence tending to show, at least, that before Wilcox had cut
the timber on the "Kickbush lands," and delivered it at his
mill, the plaintiff notified the defendant that he claimed the
lumber or timber on said land, or, at least, that he claimed
Wilcox should pay him $100 before he was authorized to
sell or dispose of the same.

Upon this state of facts the plaintiff had a verdict and

judgment in his favor for the sum of $100 and interest, with costs; it appearing that the lumber described in the complaint had been delivered to the defendant as provided by law, on his giving security, etc.   The defendant appealed.

For the appellant there were briefs by *Silverthorn, Hurley & Ryan,* and oral argument by *Mr. Hurley.*   They contended, *inter alia,* that the title to the growing timber being in one man, and the title to the soil in another, the growing timber became personal property.   1 Washb. on R. P. (3d ed.), 9; 3 id, 301; *Bostwick v. Leach,* 3 Day, 476; *McIntyre v. Barnard,* 1 Sandf. Ch. 56; Jones on Chat. Mortg. secs. 145, 146; *Smith v. Surman,* 9 Barn. & C. 561, 573; *Bank of L. v. Crary,* 1 Barb. 542; *Smith v. Jenks,* 1 Denio, 580; *S. C.* 1 N. Y. 90; Herman on Executions, sec. 125.

For the respondent there was a brief by *Eldred & Brown,* and oral argument by *Mr. Brown.*

TAYLOR, J.   It is contended by the learned counsel for the appellant that the evidence conclusively establishes the right of the appellant to the possession of the property at the time the action was commenced, and that as a consequence the court should have directed a verdict in favor of the appellant.   It is admitted that the only right the appellant had to the property was derived under the contract made between Wilcox and the appellant, and it is also admitted that the only right Wilcox had to the timber and lumber was the right Wilcox derived from *Lillie* by virtue of this contract between *Lillie* and Wilcox.   Whatever title, therefore, the appellant had to the property, must be derived from the respondent through Wilcox.

It is not seriously contended that in a contest between the respondent and Wilcox as to the possession and ownership of the property after default made by Wilcox in the payment of the agreed purchase money, the title and right of possession would not be in the respondent.   The only right

Wilcox shows to the property is the right derived under the parol contract with the respondent, by the very terms of which the title to the property was to remain in the respondent until the purchase price was paid; and it is clear that if such contract had been in writing, so that there was no question as to its binding effect in law, the right to the possession of the property would be in the respondent until he received his pay, and that a sale and delivery thereof to a third person before such payment was made, without the consent of the respondent, would be a conversion of the property and entitle the plaintiff to an action of replevin or trover, at his option. This has been so held by this court. *Cadle v. McLean*, 48 Wis. 630. See, also, *Sawyer v. Fisher*, 32 Me. 28; *Prentiss v. Garland*, 67 Me. 345; *Homans v. Newton*, 4 Fed. Rep. 880.

This proposition is denied by the learned counsel for the appellant. The denial of the proposition is based upon another proposition, viz., that the standing timber on the "Kickbush lands," the title to which was vested in *Lillie* by virtue of his written contract with Kickbush, who owned the land, converted the standing and growing timber into personal property, as between *Lillie* and any other person claiming under him, and that, consequently, his parol sale of the standing timber to Wilcox, and Wilcox's possession under such parol contract, vested a title in Wilcox, which he could convey to a third person freed from the condition that the title should remain in *Lillie* until payment made, if such third person had no knowledge of such conditional sale when he made the purchase, by virtue of the provisions of sec. 2317, R. S.

We think the conclusion drawn by the learned counsel for the appellant would be the logical conclusion, if it be admitted that the standing timber on the "Kickbush lands" was personal property in the possession of *Lillie* at the time he made his parol contract for the sale thereof to Wilcox and

delivered the possession to him. The statute above quoted was intended to prevent what the legislature evidently thought might be the means of doing an injustice to a purchaser of personal property dealing with one having the actual possession thereof and the apparent ownership, without knowledge of the secret agreement that the title was to remain in the vendor, notwithstanding the possession and apparent ownership was in the vendee. *Williams v. Porter*, 41 Wis. 422; *Kimball v. Post*, 44 Wis. 471. The difficulty of the argument of the learned counsel for the appellant is the assumption that the standing timber on the "Kickbush lands" was personal property in the hands of *Lillie* by virtue of his contract with Kickbush.

This precise question was considered by this court in the case of *Daniel v. Bailey*, 43 Wis. 569; and it was there held that the interest of a party under a contract for the purchase of the standing timber on lands owned by another was an interest in lands, and that a contract to assign or sell such interest to a third person was void under the statute, unless the same was in writing, as required for the sale of an interest in real estate. To the same effect are *Strasson v. Montgomery*, 32 Wis. 52; *Warner v. Trow*, 36 Wis. 196; *Young v. Lego*, 36 Wis. 394. Although there may be decisions of other courts holding a contrary doctrine under statutes substantially like ours, the case of *Daniel v. Bailey*, above quoted, was decided after full argument, and settles the question for this state, and, we think, settles it rightly.

The contract between *Lillie* and Wilcox was not, therefore, a conditional sale of personal property within the meaning of said sec. 2317, R. S., and is not in any way affected by said section. Notwithstanding the oral contract between *Lillie* and Wilcox was void under the statute of frauds, being a contract for the sale of an interest in real estate, still, *Lillie* having permitted Wilcox to go on and cut and remove the timber from the land, with the implied

Lillie vs. Dunbar.

assent or license of *Lillie*, he was not a trespasser in cutting and removing the same, and an absolute title would have vested in him upon the payment of the purchase money according to agreement; and if he had permitted Wilcox to make an absolute sale of the property to a third person, for a valuable consideration, with knowledge and without objection, he would undoubtedly have lost his right to claim the property of such vendee. *Marsh v. Bellew*, 45 Wis. 36, 54, 55. In the absence of any consent on the part of *Lillie* that his vendee, Wilcox, should sell the timber he was authorized to cut and remove from the land, there could be no waiver on his part of his right to the timber when cut, and the vendee of Wilcox would have the rights Wilcox had under his contract with *Lillie*, and no other. The judgment of the circuit court was right, therefore, in limiting the plaintiff's recovery to the amount of the contract price, with interest, instead of giving him, as damages, the value of lumber or timber cut and removed from the land.

The defendant having purchased of Wilcox without reliance upon any known or recorded title in him of the property in question, and being compelled, in order to show any pretense of title in his vendor, Wilcox, to trace such title from the respondent, he cannot claim any greater or other interest in the timber than was vested in Wilcox by virtue of his contract with *Lillie*, unless, as above stated, he can show that he made his purchase from Wilcox with the knowledge and assent of *Lillie*. He is no more entitled to claim an absolute title to the timber in question, under his contract with Wilcox, as against the respondent, than he would have been entitled to claim an absolute title in fee to the land on which the timber stood if Wilcox had gone into possession under a parol agreement to purchase the land of *Lillie*, and then conveyed the land to the appellant by warranty deed. In such case, there being no title of record in Wilcox, a purchaser from him can only acquire such rights

as he actually has in the land. His possession and claim of ownership gives him no power to convey to a third person any greater interest or better title than he really has. The owner of real estate who makes a contract for the sale thereof in writing, and lets the purchaser into possession, is not required to have the contract of sale recorded in order to protect his interest in the lands so sold. *Cadle v. McLean*, 48 Wis. 636, 637. The contract between *Lillie* and Wilcox being a contract for the sale of an interest in lands, it seems to us very clear that it does not come within the provisions of sec. 2317, above quoted, and is not void because not in writing and recorded as required by that section.

What was said upon this question in the cases of *Cadle v. McLean*, and *Bunn v. Valley Lumber Co.* 51 Wis. 376, and which may appear to be in conflict with this opinion, was not necessary to the decision of either of those cases, and cannot be regarded, therefore, as settling the question in this court differently from what is now decided in this case.

*By the Court.*— The judgment of the circuit court is affirmed.