LAIRD v. UNITED STATES.

Civ. No. 2178.

United States District Court,
W. D. Wisconsin.

Oct. 31, 1953.

Ray B. Graves, Graves & Casey, Wisconsin Rapids, Wis., for plaintiff.

H. Brian Holland, Asst. Atty. Gen., Andrew D. Sharpe & James Q. Riordan, Sp. Asst. to Atty. Gen., Frank L. Nikolay, U. S. Atty., Madison, Wis., for defendant.

STONE, District Judge.

This action is brought under Section 1346, Title 28, of the Judicial Code of the United States, 28 U.S.C.A. § 1346, and is for the recovery of the federal estate tax in the sum of $7,461.27 with interest thereon since August 27, 1948, alleged to have been illegally assessed against and collected from the estate of plaintiff's deceased husband, Melvin R. Laird.

Plaintiff is the widow and sole legatee and devisee under the will of said Melvin R. Laird, deceased, who died testate, a citizen and resident of Wood County, Wisconsin, on March 19, 1946, and proceedings were duly had for the probate of his estate in said County.

On June 8, 1948, notice of the assessment of an additional estate tax in the sum of $7,461.27 with accrued interest was received by plaintiff, then acting as sole executrix of said estate. Said additional tax resulted from the inclusion by the Commissioner of Internal Revenue in the gross estate, of the sum of $33,282.50, the value of decedent's one-fifth interest in renewal timber leases numbers 140 and 141 issued by Ministers of Lands and Forests of the Province of British Columbia, Dominion of Canada, pursuant to Sections 33 and 34 of the "Forest Act", being Chapter 102 of the Revised Statutes of British Columbia, 1936, granting rights and title to the growing timber on lands therein described situated within said Province of British Columbia.

On August 27, 1948, the additional tax in the sum of $7,461.27 and interest thereon at 6% from June 19, 1947, to August 27, 1948, in the sum of $534.71 was paid by plaintiff, as said executrix, to George Reismer, then acting Collector of Internal Revenue for the district of Wisconsin.

Within the time required by statute, plaintiff filed with said Commissioner of Internal Revenue claim for refund for the amount paid as aforesaid, and set forth therein as grounds for allowance that the interest of decedent under the said timber leases was an interest in real estate without the taxing jurisdiction of the United States and not personal property as determined by said Commissioner.

On June 2, 1950, the Commissioner of Internal Revenue duly notified plaintiff that said claim for refund had been denied in its entirety. Pursuant to judgment of the County Court for Wood County, Wisconsin, the entire estate of decedent was assigned to plaintiff, who would be entitled to any amounts recovered in this action.

The parties agreed that the facts set forth in the signed stipulation, received in evidence and on file herein, are true, and the court so finds.

The wording of both contracts are identical except as to the dates and the description of the real estate. The agreements, signed by decedent and others jointly, are designated as leases and are renewals of previous leases issued to Miami Lumber Company, for the sale of the timber located on the premises described.

The agreement between the United States and Canada respecting double taxation, estate taxes and succession duties, dated June 8, 1944, 59 Stat. 915, reads:

"Article II

"1. Real property situated in Canada shall be exempt from the application of the taxes imposed by the United States of America.

"2. Real property situated in the United States of America shall be exempt from the application of the taxes imposed by Canada.

"3. The question whether rights relating to or secured by real property are to be considered as real property for the purposes of this Convention shall be determined in accordance with the laws of the contracting State imposing the tax."

Plaintiff contends that Section 811 of the Internal Revenue Code, 26 U.S.C.A. § 811, which exempts from federal estate tax real property situated outside the United States, exempts the Canadian timber leases owned by decedent at the time of his death, and whether the leases are to be classified as contracts conveying an interest in real estate are to be governed by the law of Canada, the situs of the timber. The defendant takes an opposite view, and contends that the United States Federal Estate Tax Law and not the law of Canada controls as to the classification of the timber contracts.

The contracts before the court provide for the sale of growing timber and give the decedent and others jointly interested, the right "at pleasure to cut down trees and the same carry away and to manufacture, sell and dispose of as timber or lumber or otherwise for the lessees' own sole use and behoof". The contract is to continue in force for twenty-one years upon the payment of an annual fee, and the payment of forest fire protection, taxes and such other "rates, taxes and assessments whatsoever which may be made, assessed or levied for or in respect of the demised premises." It further provides, if default occurs with respect to the payment of the foregoing charges, "the land hereby demised shall without actual re-entry on the part of the lessor or other proceedings whatever vest in the said lessor as of his former estate."

The contracts provide for renewals for consecutive and successive periods of twenty-one years. Severance of the timber was not required or contemplated within any fixed period of time.

The interest granted decedent was assessed for provincial and dominion "succession duties" by the Canadian tax authorities and was classified as "real estate vested in decedent and another person jointly", on the basis of the value of the timber as shown by the certified copy of Inventory received in evidence,

which contains a description and value of the interest of decedent in said timber holdings at the time of his death, and the assessment made against his estate for the value of said interest in real property.

The Canadian tax authorities treated decedent's interest in the timber as real property. It taxed on the basis of the value of the timber, and rightly so in conformity with the decisions of the Canadian courts.

■ Growing timber under the common law, the law of Canada, and the law of Wisconsin and of the United States, has always been considered a portion of the real property, and the owner of that timber had an interest in so much of the soil as was necessary to sustain it. That rule of law and the reason for it seem crystal clear and are supported by an abundance of authorities in this country and Canada. Hutchins v. King, 1 Wall. 53, 68 U.S. 53, 17 L.Ed. 544; Marthinson v. King, 5 Cir., 150 F. 48; Lillie v. Dunbar, 62 Wis. 198, 22 N.W. 467; Daniels v. Bailey, 43 Wis. 566; Strasson v. Montgomery, 32 Wis. 52; Williams v. Jones, 131 Wis. 361, 111 N.W. 505.

The Canadian courts have uniformly held that a sale of rights under licenses to cut timber on Provincial lands in British Columbia is a contract for the sale of an interest in real property.

In Laidlaw v. Vaughn—Rhys., 44 Supreme Court of Canada Reports 458, where the defendant was a holder of timber licenses issued by the Province of British Columbia which he sold to one Clarry and claimed to be entitled to enforce a vendor's lien in respect to the balance of the purchase price money, and under the laws of Canada a purchase money lien was recognized only in the case of the sale of real estate, the court said:

"Liens on chattels (having no relation to realty) sold are gone the moment possession has changed. Other liens may arise from the express or implied intentions of the parties. In regard to real estate dealings a vendor's lien arises in favor of the vendor independently of such considerations. Can this sale of timber mean anything but a sale of real property. In principle it seems clear. In some cases the bargain may be relative to the price of timber when cut and hence, have no relation to the land. I think confusion apt to arise and has in some cases arisen out of the nonobservance of this distinction. I can see no room here for doubt or difficulty. I find moreover that in Mitchell v. McGassey (1) Chancellor Blake, as far back as 1858 decided a lien arose out of such a transaction as a sale of the rights to cut timber. His test there, put in a well-reasoned judgment was, could the specific performance be decreed of such a bargain and his deduction from the authorities that it could, and other consequences follow seems to be unanswerable. I cannot find anything in the distinction sought to be made out of these licenses by the Crown being renewable from year to year for 21 years. The presumption is in favor of renewal that if not cancelled that right continues. There is no evidence of interruption and hence the lien attaches to the rights subject to the liability of such interruption. I conclude that on principle a lien may arise upon a sale of an interest as now in question." Laidlaw v. Vaughn—Rhys., 44 Supreme Court of Canada Reports 458.

This same rule of law was applied in: Hoeffler v. Irwin, 8 Ontario Law Reports 740; Macdonell v. McKay, 15 GR. 391.

In the case of Fair v. Commissioner, 3 Cir., 91 F.2d 218, 219, in considering a proceeding involving a "hypotecas" according to the Cuban law an interest in real property only is vested by a "hypotecas", which is in effect a mortgage upon Cuban real estate that does not create a personal liability. The court holding

that the "hypotecas" involved real property and not personal property, said:

"The 'hypotecas' in question are, describing them rather freely, mortgages without accompanying bonds and without a personal debt obligation on the part of the mortgagor. They are classified by Cuban law as 'immovables,' which term is substantially equivalent to our term 'real property.' As real property situated outside of the United States the value of the hypotecas should have been excluded from the decedent's gross estate and exempted from the transfer inheritance tax." Fair v. Commissioner, 91 F. 2d 218.

The Tax Court in the case of Estate of Perigny v. Commissioner, 9 T.C. 782, held that the value of a long term 99-year leasehold interest in land situated in Kenya Colony, British East Africa, was excluded from the decedent's gross estate for Federal tax purposes, as "real property" situated outside of the United States and cited ample authority to support its ruling.

Section 811 of the Internal Revenue Code provides as follows:

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States."

■ The only question for this court to determine is, was there vested in Melvin R. Laird at the date of his death, March 19, 1946, an interest in real estate by virtue of the renewals of the timber leases issued by the Province of British Columbia, Canada, to the decedent and others jointly. The answer is "yes". His timber holdings under the leases was without question an interest in real property, the value thereof was taxable in Canada and not in the United States, and should not have been added to the gross estate by the Commissioner for the purpose of determining the tax to be assessed against the estate.

Plaintiff is entitled to judgment as prayed for in her complaint.

Plaintiff's counsel may submit to the court proposed findings of fact, conclusions of law, and judgment in accordance with this opinion.