THE OCEAN GROVE CAMP MEETING ASSOCIATION OF THE METHODIST EPISCOPAL CHURCH, DEFENDANT IN ERROR, v. HENRY M. SANDERS, PLAINTIFF IN ERROR.

Submitted December 9, 1902—Decided March 2, 1903.

1. The mere breach of covenant by the tenant can give the landlord no right of re-entry unless there be a stipulation in the lease that such breach of covenant shall work a forfeiture or determination of the tenant's interest, in which case ejectment will lie. No ejectment can be maintained by the landlord for mere breach of covenant not coupled with a proviso that the term shall end. His only remedy would be an action for breach of covenant.

2. When there is a provision in the lease that, on non-performance of a covenant by the lessee, the term shall be at an end, it is not within the operation of the seventh section of the Landlord and Tenant act; in such case ejectment by the lessor will lie without proving that there was no sufficient distress upon the premises.

--------

In ejectment. On error to the Supreme Court, the opinion of which court is reported in 38 *Vroom* 1.

For the plaintiff in error, *John S. Applegate & Son.*

For the defendant in error, *Samuel A. Patterson.*

The opinion of the court was delivered by

VAN SYCKEL, J.   This is an action of ejectment instituted in the Monmouth Circuit Court based upon alleged breaches of a deed executed by the plaintiff to the defendant, of which the following is a copy:

"This indenture made the 11th day of June in the year of our Lord 1877, between the Ocean Grove Camp Meeting Association of the Methodist Episcopal Church of the first part and Henry M. Sanders of the City of Yonkers, in the County of Westchester and State of New York of the second part: Witnesseth, that the said party of the first part for and in consideration of the sum of $2250 lawful money of the United States of America to them in hand well and truly paid by the party of the second part, at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, and the yearly assessment of rent and covenants hereinafter mentioned and reserved, to be kept and paid and performed, have demised, leased and let and hereby do demise, lease and let unto the said Henry M. Sanders, his heirs, executors, administrators and assigns all that certain plot, piece, or parcel of ground known and designated as lots Nos. 1324, 1325, 1326, 1327, on the map of lots on Camp ground of the said the Ocean Grove Camp Meeting Association of the Methodist Episcopal Church, being a part of the same premises situated in Ocean Township, in the County of Monmouth and State of New Jersey, acquired by them, the said party of the first part by virtue of the authority given by their charter for the purposes of said corporation by conveyance to them made by William D. Osborn and wife and David H. Brown and wife, by deed dated August 4, 1870, and recorded in Book 227 of Deeds of said Monmouth County, pages 57 and 60, to have and to hold the said lot or parcel of ground and all and singular the premises hereby described with the appurtenances unto the said Henry M. Sanders, his heirs, executors, administra-

tors and assigns, to his and their only proper use, benefit, and behoof, but for the purposes hereinafter designated, and under and subject to the rules and regulations which may from time to time be adopted as to manner of building upon and care of the lots, and the buildings and improvements which may be erected thereon for and during the full end and term of ninety-nine years from this day fully to be completed and ended renewable to the said Henry M. Sanders his heirs and assigns, for a like term of years forever, paying therefor to the said party of the first part their successors or assigns, and for a yearly rent for demised premises not to exceed seven per centum of the sum of Six Hundred dollars at such time or times in each year of said term as the same may be required by the said party of the first part or their successors or assigns. Subject however nevertheless, and this lease is granted and accepted accordingly, to the regulations which may from time to time be adopted and promulgated for the government of the said camp grounds, and which are hereby made part of this instrument as fully to all intents and purposes as if they were incorporated herein, and the said party of the second part for himself, his heirs, executors and administrators, doth covenant, promise and agree with the said party of the first part, their successors and assigns well and truly to pay to them the said assessment as hereinaforesaid within thirty days after the notice of the same, and in case the said party of the second part shall persistently neglect or refuse to pay the same or to observe the hereinafter contained covenants or said regulations or any or either of them or any or either herein contained, it shall be lawful for the said party of the first part their successors or assigns to enter into and upon said demised premises and hold the same as of their former estate or estates and this lease shall thereupon and from thenceforth be wholly at an end, and the estate hereby granted shall cease and determine and also that the said party of the second part shall not and will not at any time hereafter without the written consent of the party of the first part, their successors or assigns use or occupy said demised premises or any part thereof, or any building or other structure thereon or suffer

or permit the same or any part thereof to be used or occupied as a boarding house or any mercantile or mechanical trade or purposes whatsoever or in any other way or for any purpose except as a temporary residence and seaside resort for and during the term commencing the 15th day of May and ending the 30th day of October of each year; and also that the said party of the second part shall not nor will at any time during the said term give, demise, let, assign, set over or in any manner dispose of the hereby demised premises or any part thereof for all or any part of the term hereby granted to any person or persons whatever without the consent and approbation in writing of the said party of the first part, their successors or assigns first had and obtained for that purpose."

The execution and delivery of this deed was duly proven and offered in evidence by the plaintiff.

On the trial of the cause the jury was instructed to find a special verdict in answer to each of the following questions submitted to it:

1. Whether the assessments to be paid were made for the years 1887, 1888, 1889, 1891, 1893, 1894, 1895 and 1896, under the terms and provisions of the said deed, against the premises thereby demised to the defendant?

2. Was the amount so assessed in each of said years on the premises demised to the defendant less than seven per centum on $600?

3. Did the defendant receive notice of said assessments from the plaintiff association for each of said years after they were so levied on the premises demised to and owned by him?

4. Did the defendant persistently neglect or refuse to pay such assessments within thirty days after such assessment notices were respectively received, and at any time after such thirty days to the time of the commencement of this suit?

To each of these questions the jury, by its verdict, answered in the affirmative.

Thereupon the trial court certified to the Supreme Court, for its advisory opinion, the three following questions:

1. Whether the money consideration reserved in the said

deed to be paid by the defendant is rent within the meaning of the seventh section of our Landlord and Tenant act?

2. Whether the notice given was in compliance with the terms of the deed?

3. Whether the assessments were legally levied under the terms of the deed?

It is immaterial whether, as defendant contends, the Supreme Court erroneously supposed that Exhibit No. 7 was the notice referred to in the second question certified, as there was sufficient evidence to justify the verdict of the jury upon the question of annual notice of the assessments made.

To all these questions the Supreme Court certified an affirmative answer, whereupon the trial court found the defendant guilty, and rendered judgment of ouster against him.

The writ of error in this case is prosecuted to review that judgment.

We concur in the opinion of the Supreme Court, reported in 38 *Vroom* 1, in respect to the last two questions certified, and also in respect to the first question in so far as it holds that the money consideration reserved in the said deed to be paid by the defendant must be regarded as rent.

At common law, upon a breach of the condition for the payment of rent, the estate was not determined until the lessor actually entered. The reason was that, when an estate commenced by livery of seizin, it could not be determined before entry. *Dumpor's Case,* 4 *Coke* 120; *Mathews* v. *Smart,* 12 *East* 444; *Tayl. Land. & T.,* § 295, and notes.

The seventh section of our Landlord and Tenant act is copied from section 2 of the English statute (4 *Geo. II., ch.* 28), and its purpose was to make unnecessary the actual re-entry required by the common law.

Where there is a mere right of re-entry for non-payment of rent the seventh section of the statute applies, and to sustain ejectment there must be proof by the landlord that no sufficient distress could be found upon the demised premises.

The seventh section has no application to the case under consideration.

The plaintiff's right of action rests, not upon the statute, but upon the express provisions of the contract with the defendant.

The deed, hereinbefore recited, demises the *locus in quo* to the defendant for ninety-nine years, for a yearly rental not exceeding $42, payable at such time as required by the lessor, with a provision "that if the lessee shall persistently neglect or refuse to pay, it shall be lawful for the lessor to enter and hold possession and this lease shall thereupon be wholly at an end and the estate hereby granted shall cease and determine."

In this state it is well settled that, upon breach of such a covenant, the lessor, and not the lessee, has the option to declare that the term is ended. *Smith* v. *Miller,* 20 *Vroom* 521; *Greveling* v. *West End Iron Co.,* 22 *Id.* 34.

These parties, in express terms, agreed that, upon persistent failure to pay the rent as required by said deed, the term thereby granted should be at an end, and the defendant's estate should cease and determine.

The plaintiff cannot be deprived of the benefits of the contract, nor can a term be added to it, making it ineffective, unless he proves that there is no sufficient distress.

His action is based upon the deed independent of the statute.

It is familiar law that whenever a tenant unlawfully holds over after his term is ended ejectment will lie.

His term may end by mere lapse of the time stated in the lease, or it may, by express agreement, terminate sooner, upon failure to do or not to do certain acts.

In *Jones* v. *Carter,* 15 *Mees. & W.* 718, Baron Park said that where the lease contained a stipulation that for any breach of covenant it should "determine and be utterly void," it was perfectly well settled that it shall be void at the option of the lessor, and that the bringing of an action of ejectment was an election to end the term.

In *Den* v. *McShane,* 1 *Gr.* 35, which is an action of ejectment, the Supreme Court, in the opinion delivered by Chief Justice Ewing, held that where a party is in possession of

premises, under an agreement which contains this clause, "in case a failure is made in any of the payments, previous to the deed being executed, the said Bray shall be privileged to take possession of the premises," he is not entitled to notice to quit or demand of possession; the lessor of the plaintiff is authorized, by the letter of the agreement, to take possession, and, having the right of entry, can maintain an action of ejectment, and no notice to quit or demand of possession is necessary.

The failure of payment, like the efflux of the fixed time of a lease, is sufficient notice.

In *Den* v. *Post,* 1 *Dutcher* 285, Chief Justice Green stated the rule as follows:

"But if the assignment be a violation of the covenant of the tenant, the mere breach can give the landlord no right of re-entry, unless there be a stipulation in the lease that such breach of covenant shall work a forfeiture or determination of the tenant's interest. No ejectment can be maintained by the landlord for a mere breach of covenant not coupled with a proviso for re-entry. His only remedy would be an action for breach of covenant. Neither the lease nor the assignment is avoided by reason of the breach of covenant."

So well was this distinction observed at common law that, prior to the statute of 32 *Hen. VIII., ch.* 3, 4, an assignee or grantee of a reversion, although he might have an action for rent reserved, could not enter for a condition broken, for to prevent maintenance an assignment of a mere right of entry was not allowed. If, however, the estate ceased by breach of condition without entry, as where in a lease for years it was expressly declared that the lease was to become void by breach of the condition, the assignee might take advantage of it. *Taylor Land. & T.,* § 295, and cases cited.

The deed in the case *sub judice* having expressly declared that if the lessee should persistently neglect or refuse to pay it should be lawful for the lessor to enter and hold possession, and that the lease should thereupon be void and the estate of the tenant cease and determine, and the jury having, by its

verdict, found such persistent neglect and refusal to pay in accordance with the stipulations in the said deed, the plaintiff was entitled to recover possession in the action of ejectment.

The judgment below should therefore be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, VAN SYCKEL, GARRETSON, PITNEY, BOGERT, VREDENBURGH, VOORHEES, VROOM. 9.

*For reversal*—None.